(No. 22854.

THE CUNEO PRESS, INC., Plaintiff in Error, *vs.* THE IN-
DUSTRIAL COMMISSION *et al.*—(KATHRYN BENAKOVICH,
Defendant in Error.)

*Opinion filed June 14, 1935—Rehearing denied October 4, 1935.*

ANGERSTEIN, PIGGOTT & ANGERSTEIN, for plaintiff in
error.

CHARLES A. NOWAK, and JAMES A. TRACY, for defend-
ant in error.

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

This cause is here on writ of error granted to review
the judgment of the superior court of Cook county con-
firming the award of the Industrial Commission granting
compensation to defendant in error, Kathryn Benakovich,
for accidental injuries claimed to have arisen out of and
in the course of her employment by plaintiff in error. The
application for adjustment of compensation states that the

applicant on May 25, 1932, while seated on a three-foot stool at a work table in plaintiff in error's place of business, where she was then employed, fell to the cement floor, injuring her spine, right arm, head and back. The arbitrator on December 1, 1932, entered an award of $7.50 per week for 20-5/7 weeks. On review the Industrial Commission set aside that award and entered an award of $7.50 per week for 388-2/7 weeks for permanent total incapacity and thereafter a pension of $236.96 per annum. It also awarded the sum of $126.45 for medical and hospital expense. The cause is here on the contention of plaintiff in error that the award of the commission and the judgment of the superior court are contrary to the manifest weight of the evidence both as to the occurrence of an accidental injury and as to a condition of permanent total disability. There is sharp conflict in the testimony of the lay witnesses and of the medical experts. It is not argued that the evidence does not show that defendant in error fell from the stool while engaged at her usual employment.

Defendant in error testified that while she was engaged at work at a table piling up printing forms, one of the employees went by her in the narrow aisle and struck her chair, causing her to fall to the floor, striking in a sitting position; that she lay there for a while and the foreman came and asked her what was the matter, and that she cried and told him she fell off the chair. She worked until 4:30 that day and walked home a distance of a few blocks. She also testified that the fall caused her much pain; that the next morning she started to work at 9:00 o'clock; that soon thereafter everything got black before her eyes; that she had a pain at the end of her coccyx, and that she then reported her injury and pain to the plant nurse and went home about 11:00 o'clock. She testified that on May 27 Dr. Lawrence Benjamin saw her and put adhesive tape across her back; that the next day they took her to Dr. O'Connell, who took X-rays and put on more

adhesive tape; that Dr. O'Connell came to her home for a period of about sixteen days, coming first for a while each day and thereafter every other day; that she was thereafter taken to St. Elizabeth Hospital, where Dr. William J. Swift took care of her for three weeks, and from there she was taken to Holy Cross Hospital for a week under the care of Dr. Rucciz, when she went to the County Hospital for a week; that she was thereafter at home in bed for a month and was then taken to St. Luke's Hospital, where she was at the time her testimony was taken before the arbitrator. She testified that she could not use her left leg well; that her back hurt, and that she had trouble with her intestines and could not walk without crutches. She stated also that Dr. Orlando F. Scott examined and treated her and came to her home at different times. On examination before the commission she testified that on the Monday following the hearing before the arbitrator at St. Luke's Hospital she was taken home, and that ever since that time she had felt pain in her hip and left side and pain in urination; that she uses crutches, and that it pains her to step on her left leg. The hearing before the commission was held on July 20, 1933. She then testified that she had not been out of her home since the hearing before the arbitrator; that she tried to use crutches at home to exercise; that she has constant headaches and an oppressed feeling, is afraid to be alone, sees strange faces and has palpitation of the heart; that the end of her spine hurts her when she sits up; that she has difficulty in holding her urine; that she does not use the left leg at all, and that it is shorter and thinner than the right.

The testimony of Dr. Scott is that he made X-ray pictures of defendant in error's spine and made physical and clinical examinations of her; that he found no objective clinical findings; that she made complaint of her back, over the lumbar sacral region and over the coccyx; that the X-ray showed a line running down the left of the medial

line of the first sacral segment of the vertebræ, which in his opinion was not congenital but indicated a fracture, and that another X-ray picture shows a forward displacement of the lower coccygeal segments of the vertebræ. In answer to a hypothetical question he testified that in his opinion there might or could be a direct causal relationship or connection between the accident as described and the condition found in the patient. He stated, however, that he did not think her condition permanent.

Dr. Robert W. Hardin testified that he examined defendant in error in the court room and found an apparent inability to walk without crutches, and that she appeared uncertain in her gait and could not sit long in one position. He also testified that the dark line shown in the X-ray picture of the spine was suggestive of a fracture and that the two lower segments of the coccyx were displaced, forward and upward. In answer to a hypothetical question he also stated that in his opinion there was causal connection between the accident and the present condition of the patient. It was his opinion that her condition was temporary.

Dr. Alex Hershfield testified that he called to see defendant in error on July 26, 1933. On examination he discovered that she had tremor of the upper eyelids; that abdominal reflexes were exaggerated; that the left thigh was two inches less in circumference than the right thigh and the left calf was an inch and one-half less than the right, and that the knee and ankle reflexes on the right side were more exaggerated than on the left. He also testified that muscular tests showed a disproportionate disturbance on the left side, and that she seemed to drag the left leg. In answer to a hypothetical question he testified that the condition could have been caused by the injury shown by defendant in error's evidence. He testified also that, even assuming the possibility of original malingering in a case of this kind, the basis of the injury may eventually become a psychic condition and the patient may become disabled

thereby. He testified that it was almost impossible to tell the difference between traumatic neurosis and malingering.

For plaintiff in error six medical experts testified that there was no trace of fracture of the vertebræ to be found in the X-ray pictures; that the line indicated a condition amounting to a variation from the normal, called a *spina bifida occulta;* that such a condition is congenital and not the evidence of injury, and that there was no evidence of displacement of the last two segments of the coccyx. Of these, Dr. Dorrin F. Rudnick, Dr. William J. Swift and Dr. Alfred P. Colomon testified that they had examined defendant in error and found no evidence of difficulty on her part in controlling her urine, no heart palpitation nor delusions nor evidence of lack of normal conditions, and that the atrophy of the left leg was diffuse and due to the lack of use. Plaintiff in error's medical witnesses also testified that the reflexes were normal, and that defendant in error bore no evidence of organic or functional disease and no objective signs of injury. It was their opinion that she was malingering.

Seven lay witnesses testified to having made frequent visits to the home of defendant in error and on each occasion found her in bed. Rosa Benakovich, mother of defendant in error, testified that on May 26, 1932, she saw defendant in error's back and that it was black and blue. None of the doctors who examined her testified to any such condition. Some testified that they saw no such condition. Frank Jan, for plaintiff in error, testified that he was working with defendant in error when she fell; that as she slipped from the chair he caught her with his left hand under the arm; that he did not know whether she hit the floor or not, and that she got up right away and worked all that day and ran down-stairs with the rest of the employees when the day's work was done. He testified that she complained that she hurt her elbow.

In this sharp disagreement in the medical testimony it is impossible for the lay mind to determine with any feeling of assurance which is correct. That plaintiff in error fell is clearly shown by the evidence. That she has been under treatment in various hospitals and up to the time of the hearing before the commission rarely attempted to walk without crutches, and that the left limb is smaller than the right, is not disputed, nor is it clearly shown in the evidence how a young woman twenty-four years of age could so constantly keep up a course of malingering, if such it was. We are unable to say that the finding of the commission as to the existence of an accidental injury is manifestly erroneous. It is the purpose of the Compensation act that questions of fact be determined by the Industrial Commission. It is not the province of the court to substitute its judgment for that of the commission unless the court can see that the findings of the commission are clearly and manifestly against the weight of the evidence. (*Monark Battery Co.* v. *Industrial Com.* 354 Ill. 494; *Allen Son & Co.* v. *Industrial Com.* 349 id. 71; *County of Cook* v. *Industrial Com.* 327 id. 79; *Superior Coal Co.* v. *Industrial Com.* 318 id. 328.) We are of the opinion that we would not be justified in holding that the record here did not show defendant in error was injured from her fall. That such injury is permanent, however, is not shown by any evidence in the record. Her witness Dr. Scott testified before the arbitrator that he did not think her condition permanent. Some nine months later he testified before the commission that he did not think anyone would know whether her condition was permanent or otherwise. It was incumbent on defendant in error not only to show the existence of an injury arising out of and in the course of her employment but likewise the extent of that injury. This fact must be shown by direct evidence or by evidence from which the inference of such fact may

fairly and reasonably be drawn. (*Jolly* v. *Industrial Com.* 341 Ill. 46; *Standard Oil Co.* v. *Industrial Com.* 339 id. 252.) The commission, as we have stated, entered an award based upon permanent total disability. Such award was, for the reasons we have stated, entered on the wrong basis and was not justified. The superior court erred in confirming that award.

The judgment of the superior court is reversed and the cause remanded to that court, with directions to remand it to the Industrial Commission for a hearing of further evidence, if the parties be so advised, on the question of the extent of defendant in error's injury, and to enter a proper award. *Reversed and remanded, with directions.*